1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7      HOLMES HIGH RUSTLER, LLC,              Case No.  15-cv-02086-JSC

                  Plaintiff,
8
                                             **ORDER RE:  MOTION TO DISMISS**
9             v.
                                             Re: Dkt. No. 13
10     MARCO A GOMEZ,

                  Defendant.
11

12

13          Plaintiff Holmes High Rustler, LLC ("Plaintiff"), owner of property at 127 Precita Avenue,

14   San Francisco, brings this action against Defendant Marco A. Gomez ("Defendant"), the tenant

15   and lessee of one of the units at that property.  Plaintiff alleges that since 2012 Defendant has been

16   subletting rooms in his unit to undocumented immigrants, charging them more than both his

17   written lease and local regulations allow, and in exchange, unlawfully hiding the subtenants'

18   identities from Plaintiff and the authorities.  (*See* Dkt. No. 12.)  Plaintiff contends that Defendant's

19   conduct constitutes a pattern of racketeering activity in violation of the civil Racketeer Influenced

20   and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, and seeks declaratory relief in the

21   form of an order declaring that Defendant's conduct constitutes a material misuse of the unit and

22   that Plaintiff is entitled to full possession  of the property.  Now pending before the Court is

23   Defendant's motion to dismiss the First Amended Complaint ("FAC").  (Dkt. No. 13.)  Having

24   carefully considered the parties submissions, and having had the benefit of oral argument on

25   August 20, 2015, the Court GRANTS Defendant's motion.

26                              **COMPLAINT ALLEGATIONS**

27          Plaintiff owns two apartment buildings on a single parcel of property, including one

28   located at 127 Precita Avenue, San Francisco, California (the "Premises").  (Dkt. No. 12 ¶ 3.)

Defendant has resided in one of the units in the Premises since 1983.  (*Id.*)  Plaintiff purchased the property in a bank sale on December 31, 2013.  (*Id.*)  In connection with that sale, Defendant averred in writing that he had a written lease, though he has not shown a copy to Plaintiff.  (*Id.*)

For the last few years, Defendant has leased the Premises from Plaintiff for a monthly rent of $1,117.32.  (*Id.* ¶¶ 6-7.)  Plaintiff received the monthly rent payment by mail.  (*Id.* ¶ 9.)  Incorporated into Plaintiff's lease are, among others, two rent control regulations, including (1) San Francisco Rent Board Ordinance Section 37.3(c), which prohibits a tenant from charging subtenants more in rent than the tenant himself currently owes the landlord, S.F. Admin. Code § 37.3(c),[1] and (2) the Residential Rent Stabilization and Arbitration Board Rules and Regulations § 6.15C(3),[2] which prohibits any subrental of less than the entire unit for an amount in excess of the subtenant's proportional share of the rent payable to the landlord thereof.  (Dkt. No. 12 ¶ 7.)  Plaintiff has been violating these rent control regulations since February 1, 2012, by subleasing bedrooms for substantially more than the amount he owes pursuant to his lease "all the while pocketing the rent illegally charged to his subtenants."  (*Id.* ¶ 8.)

Plaintiff has been chosen "illegal immigrants" as his sublessees precisely because "they were unlikely to file complaints challenging [Defendant's] illegal activities."  (*Id.*)  The subletting practice is part of a scheme whereby Defendant promised to provide shelter and to withhold the identities of the undocumented subtenants from both the landlord and all investigating authorities in exchange for high subtenant rent payments.  (*Id.*)  Plaintiff has taken deliberate steps to conceal his wrongdoing, thus, many dates and times of violations are not known to Plaintiff.  (*Id.*)

Plaintiff filed this action on May 7, 2015.  (Dkt. No. 1.)  After Defendant moved to dismiss, Plaintiff filed the instant FAC on July 6, 2015.  (Dkt. Nos. 1, 13.)  The FAC contains two claims.  The first is a civil RICO claim, alleging that Defendant's conduct violates 18 U.S.C. § 1962(c), wrongful conduct through a "pattern of racketeering activity."  (Dkt. No. 12 ¶ 12.)  The

---

[1] *See* The Rent Ordinance, *available at* http://www.sfrb.org/index.aspx?page=1240 (last visited Aug. 12, 2015).

[2] *See* City & Cnty. of San Francisco Residential Rent Stabilization & Arbitration Bd. Rules & Regulations, *available at* http://www.sfrb.org/Modules/ShowDocument.aspx?documentid=1496 (last visited Aug. 12, 2015).

United States District Court
Northern District of California

gravamen of this claim is that Defendant and his undocumented subtenants are engaged in a racketeering enterprise.  (*Id.* ¶¶ 13-15.)  Plaintiff alleges that their conduct violates 18 U.S.C. § 1341, mail fraud, as Defendant "transmitted by mail a portion of the proceeds received from the pattern of racketeering activity" as well as Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324, which prohibits "harbor[ing] illegal immigrants and assist[ing] them in accomplishing their illegal entry into the United States[.]" (*Id.* ¶ 16.)  Plaintiff further alleges that Defendant and the subtenants' activities amount to "a common course of conduct intended to deceive and harm Plaintiff through the conduct of the illegal enterprise[,]" that each activity is related, has a similar purpose, participants, methods, victims, and results, and that their activity is the proximate cause of injury to Plaintiff inasmuch as it "adversely affects the stigma of the Property and Plaintiff's ability to achieve reasonable rents for the Premises."  (*Id.* ¶ 17)  As a remedy for the RICO violation, Plaintiff seeks a declaration that Defendant's misuse of the Premises is a material violation of Defendant's lease.  (*Id.* ¶ 19.)  Plaintiff brings a second claim solely for declaratory relief, seeking an order that due to that material breach of Defendant's lease, "the Lease is terminated and that Plaintiff is entitled to be restored to full possession of the Premises vis-à-vis [Defendant] and any subtenants[.]"  (*Id.* ¶ 20.)

Defendant moved to dismiss the FAC on July 14, 2015 contending that Plaintiff fails to state a claim upon which relief may be granted.  The Court heard oral argument on the motion on August 20, 2015.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on

*United States District Court*
*Northern District of California*

1   either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

2   cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

3   2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319,

4   326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue

5   of law.").

6       Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

7   which a party is only required to make "a short and plain statement of the claim showing that the

8   pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

9   recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

10   *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are

11   insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

12   2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint

13   or counterclaim may not simply recite the elements of a cause of action, but must contain

14   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

15   defend itself effectively."). The court must be able to "draw the reasonable inference that the

16   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a

17   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

18   reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

19                                   **DISCUSSION**

20       The civil RICO Act makes it "unlawful for any person employed by or associated with any

21   enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

22   or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

23   racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a civil RICO

24   claim, a plaintiff must allege facts showing: "(1) conduct (2) of an enterprise (3) through a pattern

25   (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or

26   property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.

27   2005) (internal quotation marks and citation omitted). Here, Defendant appears to concede that

28   Plaintiff alleged the first and third elements—conduct and a pattern of activity. Instead, Defendant

United States District Court
Northern District of California

4

contends that the FAC fails to allege facts sufficient to plausibly establish the existence of an enterprise, sufficient predicate acts, or injuries proximately caused by the enterprise's conduct. Defendant also contends that the remedy Plaintiff seeks for the inadequately pleaded civil RICO claim is unavailable as a matter of law.  As the Court concludes that Plaintiff does not sufficiently plead causation or a viable remedy, it need not and does not address Defendant's other challenges.

1.    *RICO Injury*

The final element of a civil RICO claim contains two components: first, the plaintiff must allege that his injury was proximately caused by the prohibited conduct; and second, the plaintiff must allege that he has suffered a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law. *Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005).  A lack of injury to a business or property interest is not just fatal to stating a cognizable claim for relief, but defeats the RICO plaintiff's standing to sue in the first instance.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation").

A proximate cause of injury is "a substantial factor in the sequence of responsible causation."  *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 773 (9th Cir. 2002) (citation omitted).  To prove that an injury is proximately caused by a RICO violation, a plaintiff must demonstrate that there is "a direct relationship between the injury asserted and the injurious conduct alleged." *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.3d 1303, 1311 (9th Cir. 1992) (citation omitted).  The "proximate cause requirement not only bars RICO suits by derivative victims, or those whose injuries are 'purely contingent on the harm suffered by' direct victims, but generally precludes recovery by those whose injuries are only tenuously related to the RICO violation at issue." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)).  To decide whether a plaintiff has adequately alleged proximate causation, courts consider "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of plaintiffs' damages attribute to

United States District Court
Northern District of California

5

1   defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules

2   apportioning damages to obviate the risk of multiple recoveries." *Mendoza v. Zirkle Fruit Co.*,

3   301 F.3d 1163, 1169 (9th Cir. 2002).

4        Here, Plaintiff contends that Defendant's RICO scheme "adversely affects the stigma of

5   the Property and Plaintiff's ability to achieve reasonable rents for the Premises." (Dkt. No. 12

6   ¶ 17.)  How so?  Even if Defendant had not been operating a scheme to overcharge rent to

7   undocumented sublessees, city rent control regulations would still prevent Plaintiff from receiving

8   increased rental income from Defendant's unit.  In other words, rent control—not to whom and for

9   how much Defendant subleases his unit—determines what rent Plaintiff receives.

10       And what does "adversely affects the stigma of the Property" mean?  The FAC does not

11  explain and the Court will not speculate.  For this reason alone Plaintiff has failed to sufficiently

12  allege RICO damages.  Further, for there to be a stigma which affects property values, the facts

13  creating the stigma must be publicly known, or at least known to the market that affects the

14  property values.  Plaintiff alleges that Defendant has subleased the Premises to undocumented

15  immigrants since February 2012; that is, at least one year before Plaintiff purchased the Premises.

16  (Dkt. No. 12 ¶ 8.)  Thus, any diminution in value because of the subleases to undocumented

17  immigrants would have been accounted for in the price paid by Plaintiff; in other words, Plaintiff

18  benefited from rather than suffered from the vaguely alleged stigma.

19       In the opposition, Plaintiff contends that stigma damages includes the possibility of a

20  forfeiture claim by federal immigration authorities.  (*See* Dkt. No. 19 at 11.)  But that is not

21  pleaded in the FAC, and the Court does not consider facts alleged for the first time in opposition to

22  a motion to dismiss.  *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

23  1998).  Moreover, simply stating that there is a possibility of forfeiture proceedings is insufficient;

24  to allege RICO injury Plaintiff would have to plead more facts to plausibly allege that there is the

25  possibility of a forfeiture claim that affects the value of the Premises.

26       In sum, the FAC does not sufficiently allege that the scheme to harbor undocumented

27  immigrants and charge them (and have them willingly pay) illegal rent proximately caused any

28  specific injury to Plaintiff's business or property as recognized by California law.  The Court need

1    not evaluate whether the other elements of proximate cause are sufficiently alleged.  In the event

2    Plaintiff chooses to amend the FAC, the Court notes that while "stigma" damages are cognizable

3    under California law, *see Bartleson v. United States*, 96 F.3d 1270, 1275-76 (9th Cir. 1996)

4    (noting that "[d]amages for diminution in property value due to stigma have been recognized by

5    the California courts in cases of permanent nuisance" but not continuing nuisance (collecting

6    cases)), this is only true under circumstances in which the problem cannot be corrected by

7    injunctive relief.  *See Alexander v. McKnight*, 7 Cal. App. 4th 973, 978 (1992).  In other words, in

8    determining whether stigma damages—*i.e.*, damages to compensate for the diminishing value of

9    property—are recoverable under California law, if injunctive relief could cure the nuisance, future

10   damages for depreciation in home value are unavailable.  *Id.*; *see also Santa Fe P'ship v. ARCO*

11   *Prods. Co.*, 46 Cal. App. 4th 967, 975 (1996) ("A plaintiff-landowner cannot recover damages for

12   future or prospective harm, including damages for diminution in value, in a case where the

13   nuisance is deemed to be continuing and abatable.").

14           2.      *Requested Remedy*

15           Plaintiff seeks only declaratory relief for the purported RICO violations.  Specifically,

16   Plaintiff seeks "a declaration that the misuse of the Premises . . . constitute[s] a material violation

17   of any lease held by Defendant for the Premises."  (Dkt. No. 12 ¶ 19.)  This declaration serves as

18   the foundation for the declaratory relief sought in the second cause of action—*i.e.*, that Plaintiff is

19   entitled to rescind the lease due to Plaintiff's material violation and therefore restore full

20   possession of the Premises.

21           Section 1964 of the RICO statute sets forth available civil remedies.  Part (a) vests district

22   courts with authority to "prevent and restrain" RICO violations "by issuing appropriate orders,

23   including, but not limited to: ordering any person to divest himself of any interest . . . in any

24   enterprise; imposing reasonable restrictions on the future activities or investments of any person,

25   including, but not limited to, prohibiting any person from engaging in the same type of endeavor

26   as the enterprise engaged in[.]"  18 U.S.C. § 1964(a).  Part (b) notes that in government-initiated

27   RICO proceedings the court may grant temporary restraining orders or preliminary injunctive

28   relief.  *Id.* § 1964(b).  Part (c) pertains to private RICO actions and provides in relevant part that

United States District Court
Northern District of California

1    "[a]ny person injured in his business or property by reason of a violation of section 1962 of this

2    chapter may sue therefor in any appropriate United States district court and shall recover threefold

3    the damages he sustains and the cost of suit, including a reasonable attorney's fee[.]"  18 U.S.C.

4    § 1964(c).

5         The Ninth Circuit has held that this statutory scheme does not permit private plaintiffs to

6    recover injunctive relief.  *See Religious Tech. Cent. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir.

7    1986), *cert. denied*, 479 U.S. 1103, (1987); *accord Or.-Laborers-Emp'rs Health & Welfare Trust*

8    *Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999) (citation omitted).  In so holding, the

9    Ninth Circuit reasoned that because "the statute provides an elaborate scheme that confers

10   authority to sue on both government officials and private citizens, it cannot be assumed that

11   Congress intended to authorize by implication judicial remedies for private citizens."

12   *Wollersheim*, 796 F.2d at 1088.  Specifically, although

13              part (c) of Section 1964 "does not expressly limit private plaintiffs
                'only' to the enumerated remedies, nor does part (a) expressly limit
14              the availability of the illustrative equitable remedies to the
                government . . . the inclusion of a single statutory reference to
15              private plaintiffs, and the identification of a damages and fees
                remedy for such plaintiffs in part (c), logically carries the negative
16              implication that no other remedy was intended to be conferred on
                private plaintiffs.
17

18   *Id.* at 1083.  Interpreting the structure and language of the statute in this manner, and in

19   consideration of its legislative history, the *Wollersheim* Court concluded that "Congress provided

20   precisely the remedies it considered appropriate" for private plaintiffs: treble monetary damages

21   for harm to business and property, costs, and attorneys' fees.  *Id.*; *see also Oscar*, 965 F.2d at 786

22   (noting that civil RICO provides only for treble damages for harm to business and property, not

23   even monetary recovery for personal injuries); *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710

24   F. Supp. 2d 1008, 1018 (E.D. Cal. 2010) (in the context of whether certain individuals are

25   necessary parties to a civil RICO action, noting that there is no risk of a judgment requiring the

26   defendant to convey property because "[t]he only remedy for a civil RICO violation brought by an

27   individual . . . is treble damages, costs, and attorneys' fees").

28         The Ninth Circuit has not yet ruled on the availability of declaratory relief for civil RICO

United States District Court
Northern District of California

8

United States District Court
Northern District of California

plaintiffs.  Tellingly, Plaintiff concedes that it cannot cite a single case within the Ninth Circuit that has granted such relief.  To hold that a private plaintiff can obtain declaratory relief, however, would require rejection of the reasoning of *Wollersheim*.  Indeed, no court to address *Wollersheim* in the context of a private RICO plaintiff's request for declaratory relief has distinguished the case.  *See, e.g.*, *Aarona v. Unity House, Inc.*, CV No. 05-00197 DAE/BMK, 2007 WL 1963701, at *16-17 (D. Haw. July 2, 2007); *Natomas Gardens Inv. Grp.*, 710 F. Supp. 3d at 1018 (to the extent that a judgment regarding the parties' rights to property can be viewed as declaratory relief, relying on *Wollersheim* to find such relief unavailable); *Westways World Travel, Inc. v. AMR Grp.*, 218 F.R.D. 223, 242 (C.D. Cal. 2003) (in the context of a motion for class certification, not citing *Wollersheim* at all, and noting that while injunctive relief is unavailable, "there is no legal barrier to obtaining a declaratory relief under the statute").

To the contrary, the only district court to engage in an in depth discussion of *Wollersheim*'s reasoning for barring injunctive relief has found that it compels the conclusion that declaratory relief is likewise unavailable to a private RICO plaintiff.  *See Aarona*, 2007 WL 1963701, at *17.  In *Aarona*, the plaintiff-shareholders brought suit against a corporation and several of its board members, alleging that they had mismanaged the company's financial affairs, made improper distributions, engaged in self-dealing, and converted the company's assets.  *Id.* at *1.  At the core of the claims was the allegation that one of the individual defendants had unlawfully exercised all of his voting proxies to convert the company to a nonprofit corporation without members, essentially divesting the plaintiffs of membership in the corporation.  *Id.*  Among the causes of action alleged was a civil RICO claim for which the plaintiffs sought declaratory relief—specifically, an order invalidating the proxy vote, declaring existing Unity House proxies invalid, and restoring membership rights of former members.  *Id.* at 16.  The district court concluded that, given *Wollersheim*'s statutory analysis, "it is unlikely that declaratory relief would be allowed" for three reasons:

> First, if Congress wanted to allow declaratory relief by private parties, it could have set forth such remedy in the elaborate remedial scheme provided in the RICO statute.  Second, Plaintiff may seek the same relief under State law or through other claims.  Finally, Plaintiffs are essentially asking this Court to take mandatory

1  
2  
    injunction type actions (e.g., invalidate proxies, invalidate a vote of corporate status change, and then restore members to the corporation), actions which are clearly prohibited under Ninth Circuit law.

3    *Id.* at *17. The court therefore dismissed the plaintiff's civil RICO cause of action for failure to

4    state a claim.

5          The Court concurs with the *Aarona* court's analysis in all respects. First, the statutory

6    interpretation in *Wollersheim* reflects the Ninth Circuit's conclusion that the only relief available

7    to private RICO plaintiffs are the specifically enumerated remedies outlined in Section 1964(c),

8    and declaratory relief is not among them. *See Wollersheim*, 796 F.2d at 1088; *see also* 18 U.S.C.

9    § 1964(c). Second, as in *Aarona*, Plaintiff may seek the same declaratory relief it seeks in the civil

10   RICO case under State law; that is, Plaintiff seeks a declaration that Defendant is in breach of the

11   lease, and the ultimate relief sought is eviction of Defendant and return of the property to the

12   Plaintiff, all of which are available through state-law means. Lastly, also as in *Aarona*, while

13   Plaintiff frames the relief sought as purely declaratory in nature, it has injunctive undertones:

14   Plaintiff seeks not just a declaration as to the parties' relative rights to the Premises, but rather a

15   declaration *restoring possession* of the Premises to Plaintiff, which is plainly the type of injunctive

16   relief that *Wollersheim* bars. The Court finds no reason to depart from this thorough and reasoned

17   analysis reading *Wollersheim* to prohibit declaratory relief. By contrast, the only district court

18   within the Ninth Circuit that has found declaratory relief available to private RICO plaintiffs—

19   which did so in the context of class certification—did not address how such relief squares with the

20   reasoning in *Wollersheim*; in fact, it did not cite to *Wollersheim* at all. *See Westways World*

21   *Travel, Inc. v. AMR Grp.*, 218 F.R.D. 223, 242 (C.D. Cal. 2003) (in the context of class

22   certification, noting that "injunctive relief is not available" but "there is no legal barrier to

23   obtaining a declaratory relief under the statute") (citation omitted). In short, the Court agrees with

24   *Aarona* that the reasoning in *Wollersheim* renders declaratory relief unavailable to Plaintiff under

25   the circumstances presented here.

26         Plaintiff's arguments to the contrary are unavailing. Plaintiff first urges the Court to reject

27   *Wollersheim* because it is 30 years old and another court of appeals has more recently allowed

28   injunctive relief. The Seventh Circuit is the only other court of appeals to have addressed this

*(left margin, rotated text)* United States District Court   Northern District of California

1    question directly, and it has held contrary to the Ninth Circuit that RICO does allow private

2    plaintiffs to seek injunctive relief.  *Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687, 700 (7th

3    Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003).[3]  Most other courts of appeals to address

4    the question in dicta have implied that injunctive relief is unavailable.  *Compare Bolin v. Sears*

5    *Roebuck & Co.*, 231 F.3d 970, 977 n.42 (5th Cir. 2000), *Johnson v. Collins Ent'mt*, 199 F.3d 710,

6    726 (4th Cir. 1999), *and Sedima*, 741 F.2d at 489 n.20 (expressing doubt about the availability of

7    injunctive relief for private plaintiffs), *with Bennett v. Berg*, 710 F.2d 1361, 1366 (8th Cir. 1983)

8    (McMillan, J., concurring) (suggesting injunctive relief available).  But in any event, *Wollersheim*

9    remains good law in the Ninth Circuit, and the Court is bound to follow it and its reasoning.

10   Plaintiff's next argument—that declaratory relief is inherently different from injunctive relief, so

11   even if *Wollersheim* is good law, it does not extend to a request for declaratory relief—fares no

12   better.  Putting aside the fact that the declaration Plaintiff seeks sounds in injunctive relief, for the

13   reasons set forth above, while *Wollersheim* itself does not hold that declaratory relief is

14   unavailable, its reasoning compels that conclusion.

15          Plaintiff also argued that declaratory relief is nevertheless available under a separate

16   statute, the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Declaratory Judgment Act

17   "provides that 'any court of the United States, upon the filing of an appropriate pleading, may

18   declare the rights and other legal relations of any interested party seeking such declaration,

19   whether or not further relief is or could be sought.'"  *Countrywide Home Loans, Inc. v. Mortg.*

20   *Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011).  But "[a] declaratory judgment is not a theory

21   of recovery."  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (quoting

22   *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 775 (1st Cir. 1994).  Thus, its

23   remedy is unavailable where the plaintiff has not pleaded a cognizable claim in the first instance.

24   *See id.*  And, unsurprisingly, Defendant is unable to cite a single case in which the Court granted

25   solely declaratory relief to a private plaintiff pursuant to the Declaratory Judgment Act on a civil

26

27   [3] On review, the Supreme Court expressly declined to address whether declaratory relief is
     available to a private plaintiff in a civil RICO action.  *See Scheidler v. Nat'l Org. of Women*, 537
28   U.S. 393, 411 (2003).

RICO claim.  Thus, Plaintiff's reliance on the Declaratory Judgment Act does not save its RICO claim.

Because the requested relief is unavailable, Plaintiff fails to state a cognizable claim for relief under the civil RICO statute.  Thus, the RICO claim must be dismissed for this additional reason.  Further, because Plaintiff may not obtain declaratory relief based on a violation of the RICO statute, the second claim for declaratory relief must also be dismissed.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's motion to dismiss the FAC.  Plaintiff shall have leave to amend to cure the deficiencies described above.  Plaintiff is cautioned, however, that such amendments should only be made if Plaintiff can make such allegations in good faith and consistent with Federal Rule of Civil Procedure 11.  Plaintiff shall file a Second Amended Complaint ("SAC") by September 10, 2015.  Failure to file an SAC may result in dismissal of the claims with prejudice.

This Order disposes of Docket No. 13.  The Court continues the case management conference to November 19, 2015 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: August 20, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

12