UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLMES HIGH RUSTLER, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARCO A GOMEZ,<br><br>　　　　　Defendant. | Case No. 15-cv-02086-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 28 |

Plaintiff Holmes High Rustler, LLC ("Plaintiff"), owner of property at 127 Precita Avenue, San Francisco, brings this action against Defendant Marco A. Gomez ("Defendant"), the tenant and lessee of one of the units at that property. Plaintiff alleges that since 2012 Defendant has been subletting rooms in his unit to undocumented immigrants, charging them more than both his written lease and local regulations allow, and in exchange, unlawfully hiding the subtenants' identities from Plaintiff and the authorities. (*See* Dkt. No. 27.)[1] Plaintiff contends that Defendant's conduct constitutes a pattern of racketeering activity in violation of the civil Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962. Now pending before the Court is Defendant's motion to dismiss the Second Amended Complaint ("SAC"). (Dkt. No. 28.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on December 10, 2015, the Court GRANTS Defendant's motion.

**BACKGROUND**

**I.     Complaint Allegations**

Plaintiff owns two apartment buildings on a single parcel of property, including one

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   located at 127 Precita Avenue, San Francisco, California.  (Dkt. No. 27 ¶ 3.)  Defendant has

2   resided in one of the apartment building's units ("the Premises") since 1983.  (*Id.*)  Plaintiff

3   purchased the buildings in a bank sale on December 31, 2013.  (*Id.*)  For the last few years,

4   Defendant has leased the Premises for a monthly rent of $1,117.32.  (*Id.* ¶¶ 6-7.)  In connection

5   with the sale of the buildings to Plaintiff, Defendant averred in writing that he had a written lease,

6   though he has not shown a copy of the lease to Plaintiff.  (*Id.*)  Incorporated into Plaintiff's lease

7   are, among others provisions, two rent control regulations, including (1) San Francisco Rent Board

8   Ordinance Section 37.3(c), which prohibits a tenant from charging subtenants more in rent than

9   the tenant himself currently owes the landlord, S.F. Admin. Code § 37.3(c),[2] and (2) the

10  Residential Rent Stabilization and Arbitration Board Rules and Regulations § 6.15C(3),[3] which

11  prohibits any subrental of less than the entire unit for an amount in excess of the subtenant's

12  proportional share of the rent payable to the landlord thereof.  (Dkt. No. 27 ¶ 7.)  Plaintiff has been

13  violating these rent control regulations since February 1, 2012, by subleasing bedrooms for

14  substantially more than the amount he owes pursuant to his lease "all the while pocketing the rent

15  illegally charged to his subtenants."  (*Id.* ¶ 8.)  Thus, Defendant reaps a benefit by "goug[ing]" the

16  subtenants who pay him rent.  (*Id.*)

17        Plaintiff has chosen undocumented immigrants as his sublessees because "they were

18  unlikely to file complaints challenging [Defendant's] illegal activities."  (*Id.*)  The subletting

19  practice is part of a scheme whereby Defendant promised to provide shelter and to withhold the

20  identities of the undocumented immigrants from both the landlord and all investigating authorities

21  in exchange for high subtenant rent payments.  (*Id.*)  Plaintiff has taken deliberate steps to conceal

22  his wrongdoing, thus, the dates and times of violations are not known to Plaintiff.  (*Id*. ¶ 19.)

23        At the time of the buildings' sale to Plaintiff, Defendant submitted to the prior owner a

24  written tenant questionnaire that deceptively withheld information about the "enterprise."  (*Id.*

---

[2] *See* The Rent Ordinance, *available at* http://www.sfrb.org/index.aspx?page=1240 (last visited Aug. 12, 2015).

[3] *See* City & Cnty. of San Francisco Residential Rent Stabilization & Arbitration Bd. Rules& Regulations, *available at* http://www.sfrb.org/Modules/ShowDocument.aspx?documentid=1496 (last visited Aug. 12, 2015).

United States District Court
Northern District of California

1  ¶ 18.)  Because Plaintiff was unaware of the scheme at the time of purchase, Plaintiff paid a higher
2  price for the property than it would have had it known about the information.  (*Id.*)  Plaintiff
3  alleges that the value of the property has been further reduced due to Defendant's conduct.  (*Id.*
4  ¶ 18.)

## II.   Procedural History

Plaintiff filed this action on May 7, 2015.  (Dkt. No. 1.)  The Court dismissed the First Amended Complaint ("FAC"), which contained two causes of action.  The first, a RICO claim, alleged that Defendant and his undocumented subtenants are engaged in a racketeering enterprise premised on predicate acts of mail fraud, in violation of 18 U.S.C. § 1341, and violation of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324.  (Dkt. No. 12 ¶¶ 12-16.)  As a remedy for that RICO violation, Plaintiff sought a declaration that Defendant's misuse of the Premises is a material violation of his lease.  (*Id.* ¶ 19.)  The FAC's second cause of action was for declaratory relief, seeking an order that due to the material breach of Defendant's lease, the lease must be terminated and Plaintiff is entitled to full possession of the Premises.  (*Id.* ¶ 20.)  The Court dismissed the RICO claim, concluding that Plaintiff failed to sufficiently plead causation or a viable remedy inasmuch as only money damages, not declaratory or injunctive relief, is available for a private civil RICO claim.  *Holmes High Rustler, LLC v. Gomez*, No. 15-cv-02086-JSC, 2015 WL 4999737, at *3 (N.D. Cal. Aug. 21, 2015).  For the latter reason, the Court also dismissed the second cause of action for declaratory relief.  *Id.* at *7.

The SAC now contains a single claim for relief under RICO.  Plaintiff alleges, as before, that Defendant and the illegal subtenants—all undocumented immigrants—constituted an enterprise.  (Dkt. No. 27 ¶¶ 8, 15.)  Plaintiff contends that the enterprise is structured to defraud Plaintiff, as landlord, as well as government authorities, and that the conduct violates Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324, and the submission of monthly rent payment via mail constitutes mail fraud in violation of 18 U.S.C. § 1341, both of which are predicate acts for RICO purposes.  (*Id.* ¶ 9.)  Specifically, Plaintiff alleges that Defendant "and the various and as yet unidentified illegal immigrants who sublease space in the Premises from [Defendant] [are] part of a collective agreement to violate [local rent rules] in exchange for

United States District Court
Northern District of California

1   [Defendant's] silence on any violations of immigration laws." (*Id.* ¶ 8.) Plaintiff alleges that these
2   activities amount to a common course of conduct that have proximately caused injury to Plaintiff's
3   property by "adversely affect[ing] the stigma of the Property and Plaintiff's ability to achieve
4   reasonable rents for the Premises." (*Id.* ¶ 17.) Plaintiff seeks an unidentified amount of money as
5   damages for the RICO violation. (*Id.* at 6.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the

4

1  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a

2  complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

3  reviewing court to draw on its judicial experience and common sense."  *Id.* at 663-64.

## DISCUSSION

The civil RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To state a civil RICO claim, a plaintiff must allege facts showing: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted).  Defendant contends that the SAC fails to allege facts sufficient to plausibly establish the existence of an enterprise, sufficient predicate acts, or injuries proximately caused by the enterprise's conduct.  The Court concludes that Plaintiff still fails to plead a RICO injury proximately caused by an actionable predicate act and therefore fails to state a civil RICO claim.

### A. *The Enterprise*

Plaintiff alleges that Defendant and his subtenants are an "associated-in-fact" enterprise. "[A]n associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  To establish the existence of such enterprise, a plaintiff must allege "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit."  *Id*.

Defendant concedes that Plaintiff has alleged an ongoing organization and a continuing unit, but argues that Plaintiff has not sufficiently alleged a common purpose.  In particular, Defendant contends that Plaintiff has alleged that Defendant's purpose in engaging in the racketeering activity (the harboring of the undocumented immigrants) was so he could charge them more rent than allowed by San Francisco law, whereas the purpose of the other members of

5

the enterprise, the undocumented immigrant subtenants, was to avoid detection by government authorities. (Dkt. No. 27 ¶ 8 (alleging that the enterprise is "designed to gouge for the benefit of [Defendant] those undocumented aliens who participate in the enterprise").) The SAC's allegations, viewed in the light most favorable to Plaintiff, support an inference of the common purpose of violating the United States immigration laws. That the benefit to each member of the enterprise may be different does not mean each did not share a common purpose.

Defendant also contends that Plaintiff has not satisfied the "enterprise" element because it has not alleged facts showing that Defendant is separate from the enterprise itself. But Defendant does not address Plaintiff's allegation that the enterprise consists of Defendant and his subtenants. (Dkt. No. 27 ¶ 15.) The Court therefore declines to dismiss the complaint on this ground.

B.   *A Pattern of Racketeering Activity*

A pattern of racketeering activity requires at least two separate predicate acts. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (citing 18 U.S.C. § 1961(5)). Section 1961(a) enumerates the acts which are considered "racketeering activity" (i.e. "predicate acts"). Plaintiff alleges two predicate acts here: (1) harboring an illegal alien in violation of 8 U.S.C. § 1324 and (2) mail fraud in violation of 18 U.S.C. § 1341. The SAC, however, fails to allege facts that allow the Court to draw a plausible inference that Defendant engaged in either predicate act.

1.   *Harboring illegal aliens*

Although the SAC does not specify which subsection of 8 U.S.C. § 1324 Plaintiff alleges as a predicate act, at oral argument it became apparent that Plaintiff is alleging that Defendant violated Section 1324(a)(1)(A)(iii): "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, *harbors*, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." (Emphasis added). While the SAC alleges that Defendant "harbored" undocumented immigrants, it does not allege any facts whatsoever to support that conclusion. Plaintiff is merely reciting the elements of the crime rather than alleging facts that support a reasonable inference that Plaintiff (1) knew his subtenants were

6

undocumented immigrants, and (2) was harboring them in violation of federal immigration law.

2. *Mail fraud*

The SAC likewise does not state a claim for mail fraud. Mail fraud consists of: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails; and (3) specific intent to defraud. *Sanford*, 625 F.3d at 557. Allegations of mail fraud must comply with Federal Rules of Civil Procedure 9(b). *Id.* at 557-58. The SAC merely alleges that Defendant "transmitted by mail a portion of the proceeds received from the racketeering activity[.]" (Dkt. No. 27 ¶ 16.) That is, the mail fraud consists of Defendant's submission of monthly rent payments to Plaintiff with the rent payment derived, in part, from the payments made to Defendant by his undocumented immigrant subtenants. (*Id.* ¶ 9.) These vague allegations do not come close to satisfying Rule 8, let alone Rule 9(b). Most fundamentally, Plaintiff does not explain how Defendant's payment of rent to Plaintiff is part of a scheme to defraud. Plaintiff does not cite any case, and the Court is aware of none, in which mailing the proceeds of illegal activity constitutes mail fraud, which is all that Plaintiff alleges. Moreover, what is even more puzzling is that Plaintiff alleges that Defendant has *not* paid any rent to Plaintiff (*id.* ¶ 8), directly contradicting its conclusory allegation that the payments somehow constitute mail fraud. Plaintiff's citation of *Emery v. American General Finance, Inc.*, 71 F.3d 1343 (7th Cir. 1995), does not help Plaintiff. There the court described the mail fraud statute as punishing conduct "where in order to get money or something else of monetizable value from someone you make a statement to him that you know to be false, or a half truth that you know to be misleading, expecting him to act upon it to your benefit and his detriment." *Id.* at 1346 (citation omitted). The purported mail fraud here—the mailing of the rent check (or not mailing the rent check, depending on which allegations of the SAC one reads), does not involve any misrepresentations or omissions and were not about fraudulently getting money or something of monetizable value from Plaintiff.

In sum, as Plaintiff has not adequately pled even one predicate act, he has not alleged the requisite pattern of racketeering and the RICO claim must therefore be dismissed. *See Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1044 (N.D. Cal. 2011) (dismissing RICO claim because the plaintiff was unable to state a claim for at least two predicate acts).

C. *Injury*

The final element of a civil RICO claim—the pattern of racketeering causing injury to Plaintiff's business or property—contains two components: first, the plaintiff must allege that his injury was proximately caused by the prohibited conduct; and second, the plaintiff must allege that he has suffered "a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law[.]" *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005). A lack of injury to a business or property interest is not just fatal to stating a cognizable claim for relief, but defeats the RICO plaintiff's standing to sue in the first instance. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation").

A proximate cause of injury is "a substantial factor in the sequence of responsible causation." *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 773 (9th Cir. 2002) (quotation marks and citation omitted). To prove that an injury is proximately caused by a RICO violation, a plaintiff must demonstrate that there is "a direct relationship between the injury asserted and the injurious conduct alleged." *Id.* (quotation marks omitted) (citing *Holmes v. Sec. Investor Prot. Corp*, 503 U.S. 258, 268-69 (1992)); *see also Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 991 (2010) ("Our precedent makes clear . . . that the compensable injury flowing from a [RICO] violation . . . necessarily is the harm caused by [the] predicate acts.") (internal quotation marks and citation omitted) (alterations in original). The "proximate cause requirement not only bars RICO suits by derivative victims, or those whose injuries are 'purely contingent on the harm suffered by' direct victims, but generally precludes recovery by those whose injuries are only tenuously related to the RICO violation at issue." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)). To decide whether a plaintiff has adequately alleged proximate causation, courts consider "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of plaintiffs' damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple

8

recoveries." *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002) (citation omitted).

Plaintiff contends that Defendant's pattern of racketeering "adversely affects the stigma of the Property and Plaintiff's ability to achieve reasonable rents for the Premises." (Dkt. No. 27 ¶ 17.) Even assuming Plaintiff had adequately alleged the immigration and mail fraud predicate acts, the SAC does not plausibly allege that these acts proximately caused these alleged injuries.

First, Plaintiff has not alleged any facts that plausibly suggest the RICO activity affects Plaintiff's "ability to achieve reasonable rents for the Premises." The SAC defines the "Premises" as Defendant's three-bedroom apartment unit. (*Id.* ¶ 3.) Plaintiff also alleges that Defendant's lease sets the amount of his rent payment and that the Premises are governed by rent control. (*Id.* at ¶ 7.) As the Court noted in dismissing the FAC, that Defendant charges his undocumented immigrant subtenants more than allowed by San Francisco law does not affect the rent Plaintiff is allowed to charge Defendant. *Holmes High Rustler*, 2015 WL 4999737, at *4. Plaintiff has again failed to plausibly allege that his RICO damages include lost rental income for the Premises.

Second, Plaintiff has not alleged any facts that support a plausible inference that the predicate acts affected the value of the apartment building itself. Plaintiff alleges that it was not aware when it purchased the apartment building that Defendant was harboring undocumented immigrants and that as a result "Plaintiff paid too high a price for the Property." (Dkt. No. 27 ¶ 18.) What facts support Plaintiff's conclusory allegation that it paid too high a price for the property and that the property is worth less than it paid because one unit in a six-unit apartment building has some unalleged number of undocumented immigrants? Plaintiff must allege facts, not just conclusions. Moreover, Plaintiff does not even make any argument as to how the so-called mail fraud—the mailing of rent checks to Plaintiff—decreased the value of the apartment building. The SAC's new allegations regarding "a written tenant questionnaire concerning the illegal enterprise" are not sufficient to show causation. The allegedly false questionnaire is not pled as a predicate act; nor does it appear that it could be. It also is not pled in conformance with Rule 9(b).

Third, even if Plaintiff could overcome those hurdles, Plaintiff has not and cannot allege that it was a direct victim of the RICO scheme. "Proximate causation for RICO purposes requires

some direct relation between the injury asserted and the injurious conduct alleged." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (internal quotation marks and citation omitted). In *Hemi Group*, for example, New York City sued a New Mexico business that sold cigarettes for lost tax revenue. The City claimed that the business's failure to file customer lists with the State of New York constituted mail fraud. The United States Supreme Court held that the City could not establish proximate cause as a matter of law because the fraudulent conduct was directed at a third party—the State of New York—and the City was only indirectly injured as a result of that fraud. 130 S. Ct. at 988-90; *see also Rezner*, 630 F.3d at 873 (discussing *Hemi Group*). In *Anza*, the Supreme Court similarly held that a business could not pursue a RICO claim against a competitor based on that competitor's fraud against the State of New York. "It was the State that was being defrauded and the State that lost tax revenue as a result." 54 U.S. at 458.

An insufficient indirect injury is also alleged here. Defendant's sublease to undocumented immigrants does not directly injure Plaintiff; instead, Plaintiff is indirectly harmed by the "stigma" that allegedly attached to the apartment building because undocumented immigrants reside there, just as the plaintiff in *Holmes* was indirectly injured by the loss of tax revenue and the *Anza* plaintiff was indirectly harmed by having its competitor undercut it with lower prices.

*Anza* described three rationales for the proximate cause requirement, all of which lead to the conclusion that Plaintiff has not sufficiently alleged causation here. The first consideration is that with indirect harm it is difficult to assess causation. *Id*. at 458. If, in fact, the value of the apartment building is less than what Plaintiff paid for it in December 2013, there could be many causes of such a decrease in value, including neighborhood issues, Plaintiff's unfulfilled expectations as to whether they could remove tenants, such as Defendant, who are covered by rent control, and the volatility of the real estate market, to name a few. *See Canyon Cnty.*, 519 F.3d at 982-83 (holding that proximate cause was not shown where "there are numerous alternative causes that might be the actual source or sources of the County's alleged harm").

Second, the inquiry evaluating the harm to Plaintiff would be too speculative. *Anza*, 457 U.S. at 459. A court would be forced to evaluate the extent to which the presence of a few

1   undocumented immigrants in one unit of a six-unit apartment building contributed to a decrease in

2   value of the building. "This would be an 'intricate, uncertain' inquiry of the type that the *Anza*

3   Court warned about." *Canyon Cnty.*, 519 F.3d at 983 (citation omitted).

4         A third concern is whether there are more immediate victims of the defendants' alleged

5   RICO violations who are likely to sue. Here, the United States government—the direct victim of

6   the immigration fraud—deports undocumented immigrants from the United States every day.

7   Plaintiff has not articulated any reason why the United States would not take such action here if, in

8   fact, Defendant's subtenants are not in the United States legally as Plaintiff alleges.

9         In short, the SAC does not sufficiently allege that the scheme to harbor undocumented

10   immigrants and charge illegal rent proximately caused any specific injury to Plaintiff's business or

11   property.

12         D.    *Leave to Amend*

13         Leave to amend may be denied "where the amendment would be futile." *Gardner v.*

14   *Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Further amendment may be denied as futile where a

15   plaintiff has already amended the complaint once. *See Semiconductor Energy Lab. Co. v. Yujurio*

16   *Nagata*, No. C 11-02793 CRB, 2012 WL 177557 at *8 n.6 (N.D. Cal. Jan. 23, 2012) (citing *Bonin*

17   *v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

18         Here, Plaintiff has already amended its complaint twice and yet it is still bereft of sufficient

19   factual allegations. And the latest round of amendment came after the Court discussed in detail

20   the deficiencies in the FAC regarding the allegations of injury proximately caused by the

21   purported RICO conduct. Nonetheless, at oral argument Plaintiff represented that it had a

22   reasonable basis to allege more facts regarding at least the immigration violation; in particular,

23   that Plaintiff could allege that Defendant admitted to Plaintiff that he was harboring

24   undocumented immigrants.

25         Even assuming Plaintiff could allege the immigration violation if given leave to amend, the

26   Court is doubtful that any mail fraud could be sufficiently alleged. But because the FAC was not

27   dismissed on those grounds, the Court will grant Plaintiff leave to amend should it possess facts

28   which it can allege in good faith to support its mail fraud accusation.

The Court also doubts that Plaintiff can sufficiently allege proximate causation for the reasons explained in this Order. However, as Defendant did not raise the *Anza* issue until the reply memorandum, the Court will still grant leave to amend.

## CONCLUSION

For the reasons described above, the Court GRANTS Defendant's motion to dismiss the SAC with leave to amend. Plaintiff is cautioned to include any and all factual allegations it can make in good faith in support of its claims; the Court will not grant further leave to amend to make factual allegations that could have been made earlier. Any amended complaint must be filed by January 4, 2016. If Plaintiff chooses not to file a Third Amended Complaint, judgment shall be entered in favor of Defendant and against Plaintiff.

This Order disposes of Docket No. 28.

**IT IS SO ORDERED.**

Dated: December 18, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge